IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

AMAN SINGH,

                Plaintiff,

     v.

K. MARKS, CATHY JESS, PAUL KEMPER,
MS. BELLIS, MS. SEITZ, EMILY NELSON,           OPINION & ORDER
KATHY NAGLE, PAULA DECKER,
THOMAS WEIGAND, TERESA WEIGAND,         14-cv-507-jdp
JEREMY GLOUDEMANS, TAD LEBRECK,
JOHN BETT, TONY STREVELER, CAROL BRIONES,
KITTY ANDERSON, SALLY TESS,
SHIRLEY STORANDT, MARK HEISE,
DANIELLE LACOST and DENNIS BASKIN,

                Defendants.

---

      Plaintiff Aman Singh, a resident of Greenfield, Wisconsin, brings claims that various state officials unconstitutionally deprived him of opportunities to participate in the Earned Release Program while he was incarcerated, that they rescinded "positive adjustment time" that he had earned, and that they denied him access to records that would have proven his ex post facto claims about positive adjustment time. Defendants filed a joint motion to dismiss and motion for judgment on the pleadings.[1] For reasons stated below, I will deny this motion. The parties have also filed motions to amend the remaining schedule, which I will grant.

      Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Motions for judgment on the pleadings under Rule 12(c) are reviewed under the same standard as motions to

---

[1] For efficiency's sake, I will refer to defendants' motion as their "motion to dismiss."

dismiss under Rule 12(b). *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

As I discussed in this court's screening orders, Dkt. 6 and 46, Singh is proceeding on the following claims:

- First Amendment retaliation claims and Fourteenth Amendment equal protection claims against defendants Cathy Jess, Sara Bellis, Kimberly Marks, Paul Kemper, Paula Decker, Thomas Weigand, Teresa Weigand, Jeremy Gloudemans, Tad LeBreck, and John Bett for refusing to place him in the Earned Release Program because he was appealing his conviction.

- Ex post facto claims against defendants Jess, Tony Streveler, Carol Briones, Kitty Anderson, Sally Tess, Shirley Storandt, Mark Heise, Danielle Lacost, Dennis Baskin, Emily Nelson, Debra Seitz, Kemper, and Kathy Nagle for eliminating his "positive adjustment time."

- An access to the courts claim against defendant Seitz for denying him access to records showing that the changes to state law prolonged his confinement.

Defendants seek dismissal of all of these claims for various reasons discussed below.

## A. *Younger* abstention and related issues

Defendants contend that the case should be dismissed under the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971). "The *Younger* doctrine requires federal courts to abstain from taking jurisdiction over federal constitutional claims that seek to interfere with or interrupt [certain] ongoing state proceedings." *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 677 (7th Cir. 2010) (citing *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007)). Defendants note that Singh filed his complaint in this action while his state court habeas case about the constitutionality of the state's "positive adjustment time" (PAT) procedures was still pending. In January 2014, the Wisconsin Court of Appeals ruled partially in Singh's favor, concluding that the retroactive application of a statute repealing PAT

eligibility violated the ex post facto clause. *State ex rel. Singh v. Kemper*, 2014 WI App 43, ¶ 19, 353 Wis. 2d 520, 846 N.W.2d 820. But it rejected Singh's challenge to a Wisconsin statute, § 973.198, altering the process by which PAT-eligible inmates seek early release.

At the time Singh filed his complaint and defendants filed their motion to dismiss, the case was pending before the Wisconsin Supreme Court. But the state-court proceedings have now concluded: in July 2016, the Wisconsin Supreme Court issued its decision affirming the court of appeals' decision in part and reversing it in part. *State ex rel. Singh v. Kemper,* 2016 WI 67, 883 N.W.2d 86. The court affirmed the court of appeals' ruling that the retroactive repeal of PAT violated the ex post facto clause with regard to one of Singh's convictions, and reversed the court of appeals by concluding that § 973.198 also violated the ex post facto clause because it delayed inmates' release dates by forcing them to wait until the first day they were eligible for early release to petition the court for release. *Id.*, ¶¶ 1 n.1, 48, 68. The case was not remanded for further proceedings, *see id.*, ¶ 1 n.1 ("there are two justices who would vote to remand this case to the circuit court for a determination of whether Singh is entitled to relief . . . . However, a majority of the court would not remand"). So at present there is no reason to think that *Younger* abstention would apply here because the state courts have completed their review of Singh's habeas petition. Therefore, I will deny defendants' motion to dismiss based on their abstention argument.

Defendants raise two related arguments, both of which I will reject. They first contend that Singh's claims are not proper § 1983 claims because he truly challenges the length of his custody. I disagree with this characterization because Singh is seeking damages for his claims regarding the Earned Release Program and PAT. What defendants term as "double-dipping," Dkt. 37, at 8, is necessary for a party bringing § 1983 claims: those cannot be brought in his

underlying habeas suit. *State v. Minniecheske*, 223 Wis. 2d 493, 498, 590 N.W.2d 17, 19 (Ct. App. 1998) ("A petition for a writ of habeas corpus is designed to challenge the taking of a person's liberty, not to obtain a money judgment."); *see also Singh v. Kemper*, 2016 WI 67, ¶ 183 (Ziegler, J., concurring in part and dissenting in part) ("To the extent that further relief is warranted, Singh indeed has other adequate remedies at his disposal. For example, Singh can . . . bring a civil suit for monetary damages, if due.").

Defendants also contend that Singh's claims against defendant Warden Kemper must be dismissed under the doctrine of claim preclusion because he is the respondent in the habeas action. But this argument makes little sense regarding Singh's PAT ex post facto claim because he *prevailed* in the Wisconsin Supreme Court on at least part of that claim. Defendants also argue that claim preclusion bars Singh's First Amendment and equal protection claims regarding his participation in the Earned Release Program because he could have brought those claims against Kemper in his habeas action. Wisconsin has adopted the "transactional approach" to determine whether there is an identity of claims for purposes of claim preclusion analysis, meaning that "all claims arising out of one transaction or factual situation are treated as being part of a single cause of action." *A.B.C.G. Enters., Inc. v. First Bank Se., N.A.*, 184 Wis. 2d 465, 480-81, 515 N.W.2d 904, 910 (1994) (internal quotation omitted).

But even assuming that claim preclusion could apply to § 1983 claims in this fashion following habeas litigation, defendants do not explain why the Earned Release Program claims rely on the same "transaction or factual situation" as Singh's PAT claims. From the complaint, those appear to be two separate programs with two separate sets of facts supporting alleged constitutional violations. The Earned Release Program is a program for

4

certain offenders who successfully complete a substance abuse treatment program, *see* Wis. Stat. § 302.05(3), whereas the PAT program provided inmates the opportunity to earn a day of PAT for every two or three years of confinement, *see* Wis. Stat. §§ 302.113(2)(b), 304.06(1)(bg)1. (2009-10). Nor do defendants explain why it would have been appropriate for Singh to bring habeas claims regarding the Earned Release Program; that is, they do not explain how their alleged discrimination and retaliation actually kept Singh in prison longer, so that he could have sought habeas relief for those events. Further factual development might make defendants' theories clearer, but I must deny their motion to dismiss on these grounds.

**B.  Qualified immunity**

Defendants also raise the doctrine of qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted). But complaints are "generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001); *see also Hunafa v. Murphy*, 907 F.2d 46, 49 (7th Cir. 1990) ("The principle that the determination of immunity need not be made at the earliest opportunity if a fuller development of the record would be helpful to a sound decision is well established . . . .").

Singh does not raise case law analogous to his Earned Release Program claims, but this omission is understandable. Although defendants list in their brief all of the actions supporting Singh's claims under both his PAT claims and his Earned Release Program claims, the qualified immunity section of their brief is titled "IN ANY EVENT, ALL OF THE

STATE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON SINGH'S *EX POST FACTO CLAIMS*," Dkt. 37, at 12 (emphasis added), and their argument is limited to discussing his ex post facto claims and the Wisconsin Supreme Court's then-pending habeas appeal regarding the PAT claims. Defendants do not specifically address the Earned Release Program claims. As pleaded, Singh states that defendants intentionally retaliated against him and discriminated against him for appealing his conviction by refusing to place him in the Earned Release Program. It is clearly established that prison officials cannot retaliate or discriminate against prisoners, and without further factual development I cannot say at this early stage that defendants are entitled to qualified immunity on these claims.

With regard to the PAT claims, Singh does provide an analogous case: he cites to *Weaver v. Graham*, 450 U.S. 24 (1981), a case in which the United States Supreme Court held that a Florida statute altering the availability of good-time credit violated the prohibitions of the ex post facto clause. In particular, the Court stated, "Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense." *Id*. at 30-31. Here, Singh alleges that defendants chose to interpret Wisconsin statutory changes in a way that did what *Weaver* prohibited. Further factual development or new arguments developed in the wake of the Wisconsin Supreme Court's ruling might support a later grant of qualified immunity, but I will not invoke the qualified immunity doctrine at this early stage of the proceedings.

## C.  Personal responsibility

Defendants contend that defendants Seitz and Nelson should be dismissed from the PAT claims because Singh alleges only that they filled out paperwork applying polices created

by defendant Jess and other defendants who were members of the committee that implemented the Wisconsin Legislature's amendments to the PAT program. But I do not read Singh's complaint as completely foreclosing the possibility that these defendants had the authority to make their own decisions about whether to approve Singh's PAT petitions. Singh also alleges that Seitz, along with other officials, refused to accept Singh's PAT petitions ever after the Wisconsin Court of Appeals ruled that the 2011 act changing the PAT rules was unconstitutional, thus presumably also making the DOC procedures unconstitutional. I will deny defendants' motion to dismiss Seitz and Nelson.

Defendants also seek dismissal of defendants LeBreck and Bett from Singh's Earned Release Program claims, contending that they cannot be held responsible for merely affirming the decision of the Program Review Committee that rejected Singh from the program. Defendants cite cases stating that "[a]n official 'who rejects an administrative complaint about a completed act of misconduct does not [cause or contribute to the violation].'" *Hohol v. Jess*, 414 F. App'x 853, 854 (7th Cir. 2011) (quoting *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)). But the problem here—Singh being held out of the Earned Release Program—does not appear to be a completed act of misconduct, but rather a wrong that could have been rectified by LeBreck and Bett, so I will not dismiss these two defendants.

**D. Access to the courts claim**

In a March 14, 2016, order, I granted Singh's motion to reconsider the screening order and allowed him to proceed on an access to the courts claim that defendant Seitz withheld statistical information about the number of PAT early releases granted before and after the procedure was amended by Wis. Stat. § 973.198 to force a prisoner to wait to file a petition to amend his sentence until the first day he was eligible for early release. Dkt. 46.

Singh alleges that he lost his ex post facto claim about § 973.198 because he needed statistical evidence to show the statute's effect. I directed the parties to provide supplemental briefing on defendants' motion to dismiss regarding that claim.

In their supplemental briefing, defendants contend that Singh's allegations do not state a cognizable access to the courts claim, and they reiterate their arguments above about Singh inappropriately bringing this federal lawsuit parallel to his habeas case.[2] I have already rejected defendants' arguments that Singh cannot bring his claims in this parallel federal proceeding, and nothing in their motion persuades me to reconsider whether Singh stated a plausible access to the courts claim.

But I note a potential problem for Singh now that the Wisconsin Supreme Court has ruled *in his favor* on his ex post facto claims about the effect of § 973.198: he will not able to prove his access to the courts claim unless he can show that he was hindered in pursuing or prevented from winning an otherwise meritorious claim. *See State ex rel. Singh*, 2016 WI 67, ¶ 68, 883 N.W.2d 86; *see also Christopher v. Harbury*, 536 U.S. 403, 414-15 (2002) ("[T]he very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong."). As with Singh's other claims, the parties will be able to address the impact of the Wisconsin Supreme Court's ruling on the access to the court claim at the summary judgment stage.

## E.  Remaining schedule

Both sides move for an extension of the dispositive motions deadline. Defendants ask to move the dispositive motions deadline to 60 days following this court's decision on their

---

[2] Singh filed his supplemental response over two months late, along with a motion to accept his late response. Dkt. 51. I will deny this motion as moot because I need not consider his arguments to deny defendants' motion to dismiss the access to the courts claim.

motion to dismiss, which I conclude is reasonable. That will affect the remainder of the pretrial deadlines and trial date itself. Accordingly, I will strike the remaining schedule and set the following new deadlines:

Dispositive motions deadline: November 28, 2016

Discovery cutoff: March 6, 2017

Final pretrial submissions and disclosures: March 13, 2017

Pretrial submission responses: March 20, 2017

Final pretrial conference: April 10, 2017, at 8:30 a.m.

Trial: April 10, 2017, at 9:00 a.m.


ORDER

IT IS ORDERED that:

1. Defendants' joint motion to dismiss and motion for judgment on the pleadings, Dkt. 36, is DENIED.

2. Plaintiff's motion for the court to accept his late supplemental response to defendants' motion to dismiss, Dkt. 51, is DENIED as moot.

3. The parties' motions to stay the existing schedule, Dkt. 50 and 52, are GRANTED. The remainder of the schedule is STRICKEN and new deadlines are set forth in the opinion above.

Entered September 28, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge