IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

AMAN SINGH,

                Plaintiff,

    v.

KIMBERLY MARKS, CATHY JESS, PAUL KEMPER,
SARA BELLIS, DEBORAH SEITZ, EMILY NELSON,
KATHY NAGLE, PAULA DECKER,
THOMAS WIEGAND, TERESA WIEGAND,
JEREMY GLOUDEMANS, TAD LEBRECK,
JOHN BETT, TONY STREVELER,
CAROL BRIONES, KATHRYN ANDERSON,
SALLY TESS, SHIRLEY STORANDT, MARK HEISE,
DANIELLE LACOST, and DENNIS BASKINS,

                Defendants.[1]

OPINION and ORDER

14-cv-507-jdp

Plaintiff Aman Singh, a resident of Greenfield, Wisconsin, brings claims that various state officials unconstitutionally deprived him of opportunities to participate in the Earned Release Program while he was incarcerated; that they rescinded "positive adjustment time" that he was eligible to learn, in violation of the Ex Post Facto Clause; and that they denied him access to records that would have proven one of his ex post facto claims about positive adjustment time.

Defendants have filed a motion for summary judgment, to which Singh did not respond by the deadline set by the court. Singh followed with a motion for an extension of time to file

---

[1] I have amended the caption to include the proper spelling of defendants' full names as provided in defendants' submissions. Defendant Nelson now has the last name Holle, but I will continue to use the name she used at the times in question.

a summary judgment that I denied. *See* Dkt. 80. So I will treat defendants' proposed findings of fact as undisputed in considering their summary judgment motion.

I will grant defendants' motion for summary judgment on each of Singh's claims. In particular, I conclude that the undisputed facts show that Singh was ineligible for the Earned Release Program because he was in medium-security custody, not because of any retaliatory or unequal treatment by defendants. I conclude that defendants are entitled to qualified immunity on Singh's positive-adjustment-time claims because defendants merely carried out statutory changes that were not patently unconstitutional. And I conclude that Singh cannot prevail on his access-to-the-courts claim, because he was not impeded in litigating a case, nor did he lose a case because of defendants' actions.

## UNDISPUTED FACTS

I draw the following facts from defendants' summary judgment materials and publicly available court records of plaintiff's criminal proceedings.

In 2008, plaintiff Aman Singh was charged with five counts of obtaining a controlled substance by fraud. He pleaded guilty to one count and the others were dismissed. In 2010 he was given a stayed sentence of 18 months in prison and 18 months of extended supervision, and he was released on probation. *See* Waukesha County Case No. 2008CF1368. I will refer to this conviction as Singh's first. After his second offense, discussed below, Singh's probation for his first conviction was revoked.

In November 2011, Singh pleaded guilty to obtaining a controlled substance by fraud in July 2011. He received a bifurcated sentence of two years in prison and three years of

extended supervision, consecutive to the first conviction. *See* Milwaukee County Case No. 2011CF4004. I will refer to this conviction as Singh's second.[2]

In another case, Singh pleaded guilty to another count of obtaining a controlled substance by fraud on August 10, 2011. He received a bifurcated sentence of two years in prison and three years of extended supervision concurrent to his other sentences. *See* Milwaukee County Case No. 2011CF4192. I will refer to this conviction as Singh's third.

Singh was admitted to Dodge Correctional Institution on January 4, 2012.

## A. Earned Release Program

The Earned Release Program (ERP) is a substance abuse treatment program administered by the DOC that defendants say "involves intensive group counseling, individual rehabilitation goals, restorative justice, reintegration modules, and any other programming that the department determines would be appropriate to assist in successful return to the community." Dkt. 75, at 12, ¶ 45. The program is "highly structured" and time consuming, and it took about six months to complete. Eligibility for ERP is determined by the sentencing court.

One of the requirements for placement in ERP is that the prisoner is in minimum-security status or lower. A prisoner in medium security could not be placed in ERP. Before March 1, 2013, it was the department's practice to bar inmates with active legal actions from participation in ERP, under the theory that inmates working on legal matters or going out to court would miss required ERP treatment activities. DOC staff also thought that an inmate appealing his conviction would be unwilling to admit or discuss factors contributing to his

---

[2] Singh also pleaded guilty to a count of obtaining a prescription drug by fraud and received a six-month concurrent sentence that is irrelevant for purposes of this opinion.

substance abuse while his case was being appealed. Singh's sentencing court for his second and third convictions found him eligible for ERP consideration by the department with the condition that he serve a minimum of 12 months in confinement for those cases prior to any ERP enrollment.

Singh was initially placed in minimum-security custody. On June 11, 2012, while he was incarcerated at Racine Correctional Institution, Singh was found guilty of attempted escape, enterprising or fraud, and gambling. Singh was disciplined for writing and trying to send a letter to another inmate that discussed the possibility of escaping the prison from his job at the RCI garage and how he would do that, for gambling by playing chess for canteen items, and for selling his services for profit by typing things for others. This discipline caused Singh's custody level to be reviewed: on June 27, 2012, he was elevated to medium-security custody.

Singh was scheduled for a February 26, 2013 reclassification review before the program review committee (PRC). The PRC reviews a prisoner's offenses, offense dynamics, offense history, sentence structure, institution behavior and adjustment, medical needs, risk rating, and program needs. *Id.* at 20–21, ¶ 96.

Defendant Sara Bellis, a social worker, met with Singh before the hearing. Singh asked for a reduction to minimum custody and placement in ERP. Bellis prepared a report for the PRC hearing. In the "Staff Appraisal and Recommendations" section of the report, Bellis stated that she did not support Singh's request to be placed in medium-security custody with ERP because of Singh's "risk rating, time remining to release, unmet offense related programming (AODA Residential) and institution adjustment." Dkt. 60-4, at 4. She stated that "it is clear, based on his offense history and current offenses, that he has distorted thoughts about the

appropriateness in trying to obtain controlled medications by fraudulently writing himself approximately 60 prescriptions." *Id.* She also noted that he was ineligible for ERP because of his criminal appeals. Bellis recommended Singh's placement at another medium institution to address his alcohol- or drug-treatment needs or that he be added to the waiting list for the Cognitive Group Intervention Program to address his "distorted thoughts" about substance use and abuse.

Defendants Marks, Decker and Thomas Wiegand sat on the PRC for the February 26 review of Singh's classification. Marks recorded the PRC's findings and ruling. The PRC found that Singh's adjustment had been "mixed," noting one minor and one major conduct report since reception. Marks stated that Singh "minimized" the major conduct report, "making it out to be no big deal" and explaining that he was found guilty only of attempted escape. *Id.* at 6. Marks also stated that "[Singh's comments] show his perception of his offenses, how he believes there were no victims." *Id.* The report stated that because Singh was appealing his 2011 convictions, he was not eligible to participate in ERP. The PRC recommended continued medium-security placement because of Singh's unmet offense-related program need, the seriousness of his offense, his serious conduct violation and recent elevation to medium-security status, and the statements he made during the hearing. The PRC issued its written decision on March 8, 2013.

On March 6, 2013, before he received the written decision, Singh requested an administrative review of the classification decision. Defendant John Bett, an appeal examiner, rejected Singh's request, stating that Singh was not allowed to file for review before Singh had received the written decision, and that there were no factual errors in the decision available to Bett. Shortly thereafter, Singh submitted an information request form to defendant Warden

Paul Kemper, asking whether it was true that AODA treatment in the Earned Release Program was not available unless a prisoner waived his right to appeal. Kemper responded, stating that no further action was needed because Bellis had given Singh a memorandum about the conditions for ERP enrollment, and a unit manager talked with Singh about the requirements for enrollment.

## B. Positive adjustment time

In 2009, the Wisconsin Legislature enacted 2009 Wisconsin Act 28, which created an opportunity for prisoners to receive "positive adjustment time" (PAT). Starting October 1, 2009, certain inmates could earn earlier release from prison (with conversion of that time into extended supervision) by following prison regulations and by performing their assigned duties. An inmate with felonies of the type Singh was convicted could earn one day of PAT for every two days he did not violate prison regulations or neglect his assigned duties. *See* Wis. Stat. § 302.113(2)(b) (2009–10). When an inmate was within 90 days of being released early under this law, the DOC Parole Commission would notify the sentencing court that it intended to modify the inmate's sentence, giving the court a chance to schedule a hearing to review that decision. Section 302.113(2)(c) (2009–10). Under these provisions, an inmate could be released on the very first day he was eligible for early release with PAT.

In 2011, the Wisconsin Legislature enacted 2011 Wisconsin Act 38, which repealed most of this scheme. As of August 3, 2011, inmates could no longer earn PAT. The early release process changed for those who had already earned PAT during the two years it was in effect. Inmates now had to petition the sentencing court to be released early, rather than the DOC Parole Commission (then known at the Early Release Commission). And the earliest an inmate could file his petition was the first day he was eligible for early release. Wis. Stat. § 973.198

(2011–12). Because the full process for review of the petition could take 90 days, this meant than an inmate filing a petition might not be released until 90 days after his first eligibility.

In both 2009 and 2011, the DOC created steering committees to plan changes in department policies, forms, and trainings so that the new laws could be implemented. The 2011 committee included, among others, defendants Mark Heise, Sally Tess, Carol Briones, Kathryn Anderson, Tony Streveler, Dennis Baskins, Shirley Storandt, and Cathy Jess. The committee formed an "Act 28 Repeal Implementation subcommittee" to review the changes to statutory language and recommend necessary policy changes. Among those on the subcommittee were defendants Heise, Tess, Briones, Anderson, Streveler, Baskins, Storandt, Danielle LaCost, and Deborah Seitz.

Defendant Jess was the Division of Adult Institutions administrator at the time. Jess, along with other members of the larger group, oversaw the work of the subcommittee and received minutes. As DAI administrator, Jess reviewed and approved the DAI policies and procedures drafted by the subcommittee. Defendants say that they did not have the authority to keep existing policies or draft new ones that violated state statute.

The subcommittee identified several DOC policies that needed to be modified or rescinded to bring DOC into compliance with the Act 38 changes to PAT. The policy changes reflected the legislature's elimination of PAT as of the effective date of the statute, and set up changes to the procedures in § 973.198 for how inmates would petition for a PAT-based release.

Sometime in the spring of 2012, Singh submitted a "Petition for Positive Adjustment Time" form to the records office at Racine Correctional Institution, seeking early release on his first conviction. I take this to be the method by which a prisoner would alert DOC officials of

his intent to petition his sentencing court for a PAT-based release under the 2011 changes to the law. Defendant Emily Nelson, a records assistant at RCI, wrote to Singh's first sentencing court stating that his petition did not appear to be appropriate because he had not served any time in prison between October 1, 2009 and August 3, 2011, dates during which the PAT program was in place. She stated that she was not sending the court a "Certification of Eligibility for Positive Adjustment Time" form, but that the court could write back if it thought that her analysis was incorrect.

As discussed below, Singh received about 13 months of presentence credit on his first conviction, so he fully served his 18-month sentence in June 2012. On October 17, 2013, the court denied Singh's request, stating that "[Singh] has served his initial confinement time on this case but remains incarcerated on an unrelated sentence, therefore the petition remains moot." Dkt. 58-3, at 2.

Singh filed a petition for writ of habeas corpus in state court, raising several issues. The ones relevant to this case are his ex post facto challenges to the 2011 changes to the PAT program. He challenged both (1) the elimination of his ability to earn PAT for his first and second sentences; and (2) the change in the way inmates petitioned for early release.

On March 26, 2014, the Wisconsin Court of Appeals issued an opinion stating that retroactive application of the PAT repeal law violated the Ex Post Facto Clause with regard to Singh's first and second sentences, because Singh was convicted and sentenced in the first case while the PAT program was in effect, and he committed his second offense when the program was in effect. *State ex rel. Singh v. Kemper*, 2014 WI App 43, ¶ 10, 353 Wis. 2d 520, 846 N.W.2d 820. But the court rejected Singh's ex post facto challenge to the change in early release petition

procedures, stating in part that Singh provided no evidence supporting his argument that there were fewer PAT-based early releases after the 2011 amendments were enacted.

In April 2014, Singh filed an "Interview/Information Request" form stating that the law library did not have the forms for petitioning the Parole Commission for PAT-based early release under Wisconsin Administrative Code § DOC 302.36. Defendant Seitz, a records supervisor, met with Singh. She told him that the 2009 procedures were repealed or changed by the 2011 law. Seitz told him that the current forms—for petitioning the court rather than the Parole Commission—were in the law library.

On April 20, 2014, Singh sent defendant Kathy Nagle, the Parole Commission chair, and another non-defendant Parole Commission member letters asking whether what Seitz told him about the old PAT rules being rescinded was true. Someone from the commission (the signature is illegible) responded, stating that the Parole Commission no longer had authority over PAT reviews.

Also on April 20, Singh sent a similar letter to defendant Jess. The letter was forwarded to the director of the Office of Program Services. The director responded, confirming that the 2009 procedures had been rescinded and discussing Singh's Earned Release Program eligibility. She did not mention the post-Act 38 procedures for seeking early release from the sentencing court.

Singh was released from prison to extended supervision in late May 2014.

In July 2016, the Wisconsin Supreme Court issued a fractured decision in Singh's habeas case—with five separate opinions—affirming the court of appeals' decision in part and reversing it in part. *State ex rel. Singh v. Kemper,* 2016 WI 67, 371 Wis. 2d 127, 883 N.W.2d 86. A majority of the court affirmed the court of appeals' ruling that the retroactive repeal of

PAT violated the Ex Post Facto Clause, at least with regard to Singh's second offense—the one he committed while the PAT law was in effect. *Id.*, ¶ 1 n.1 (explaining the mandate of the court). A majority reversed the court of appeals by concluding that § 973.198 also violated the Ex Post Facto Clause because it delayed inmates' release dates by forcing them to wait until the first day they were eligible for early release to petition the court for release. *Id.* The case was not remanded for further proceedings. *Id.* ("there are two justices who would vote to remand this case to the circuit court for a determination of whether Singh is entitled to relief . . . . However, a majority of the court would not remand").

## C. Open-records request

On April 1, 2014, Singh submitted an open-records request asking for information on the number of inmates released early under 2009 Wisconsin Act 28 from 2009 to 2011. He also asked for information about how many inmates were granted early release under § 973.198 petitions after the 2011 amendments to the PAT program were made. Defendant Seitz denied Singh's request because Wisconsin's open-records law generally does not allow prisoners to make open-records requests.

ANALYSIS

Defendants have filed a motion for summary judgment. To succeed on their motion, defendants must show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts

in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment should be granted to the moving party. *Celotex*, 477 U.S. at 322.

## A. Earned Release Program

Singh brings First Amendment retaliation and Fourteenth Amendment equal protection claims against defendants Cathy Jess, Sara Bellis, Kimberly Marks, Paul Kemper, Paula Decker, Thomas Wiegand, and John Bett for their roles in denying him placement in the Earned Release Program in early 2013 as part of a classification review. That classification decision is the only one at issue in this case.[3]

### 1. Retaliation

Singh brings claims that defendants' decisions to deny him placement in the Earned Release Program in his classification proceedings were retaliation for him appealing his criminal convictions. To succeed on a First Amendment retaliation claim, a plaintiff must show: (1) the constitutionally protected activity in which he was engaged; (2) one or more retaliatory actions taken by the defendant that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) sufficient facts to make it plausible to infer that the plaintiff's protected activity was one of the reasons defendants took the action they did against him. *Bridges v. Gilbert*, 557 F.3d 541, 556 (7th Cir. 2009).

---

[3] Singh named Teresa Wiegand, Jeremy Gloudemans, and Tad LeBreck as defendants for this set of claims, but they took part only in later classification reviews, not the March 2013 review. So I will grant defendants' motion for summary judgment regarding these defendants.

The facts here show that Singh's classification decision came near the end of the time when DOC policy explicitly stated that a prisoner pursuing appeals would make him ineligible for ERP. But I will grant summary judgment to defendants on this claim because the facts show that Singh ultimately would not have gotten ERP even if he had not appealed or even if the allegedly retaliatory policy had not been in place. The reason is that Singh's placement in medium-security status foreclosed his ERP eligibility. A plaintiff cannot win a First Amendment retaliation claim if the defendants establish that they would have taken the same actions even absent the inmate's protected speech. *Peele v. Burch,* 722 F.3d 956, 960 (7th Cir. 2013); *Kidwell v. Eisenhauer,* 679 F.3d 957, 965 (7th Cir. 2012).

Defendants meet that burden here. They show that inmates in medium-security status cannot be placed in ERP. And defendants had ample non-retaliatory reasons for keeping him in medium-security status. Bellis's recommendation and the PRC's decision was based on Singh's risk rating, his amount of time left in his sentence, his lack of AODA treatment, and his previous conduct reports, particularly his major report concerning his statements about escape. They also thought he belonged in medium custody because he continued to minimize his criminal offenses and the conduct report. Because the non-retaliatory medium-security classification decision made Singh's ineligible for ERP, it does not matter whether the ERP policy about criminal appeals was retaliatory. It wasn't the actual reason Singh lost out on ERP.

## 2. Equal protection

Plaintiff also argues that his right to equal protection under the law was violated by these decisions. "The Equal Protection Clause of the Fourteenth Amendment commands that . . . all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985).

In evaluating whether a plaintiff has stated an equal protection claim, a court first determines whether the challenged actions target a suspect class or address a fundamental right. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 637 (7th Cir. 2007). If so, a higher degree of scrutiny will be applied to evaluate the government's actions. *Id.*; *see also Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). If not, the court will apply a rational-basis test to determine whether the challenged actions were "rationally related to a legitimate state interest." *St. John's United Church of Christ*, 502 F.3d at 637–38.

Prisoners are not a suspect class, *Johnson v. Daley*, 339 F.3d 582, 585–86 (7th Cir. 2003), and plaintiff does not have a fundamental right to the Earned Release Program. When I screened Singh's complaint, I concluded that Singh had alleged a plausible equal protection claim that there is no rational basis to keep prisoners out of certain programs because they are appealing their convictions. *See* Dkt. 6, at 5. But the facts here do not support equal protection claims for similar reasons that they do not support retaliation claims. Singh ultimately was not deprived of ERP because he had filed criminal appeals. Regardless of his appeals, he was denied ERP placement because he was classified into medium-security status. Singh was not similarly situated to the minimum-security prisoners who were allowed into ERP, and he did not bring an equal protection claim about medium-security prisoners being deprived ERP. Therefore, no reasonable jury could find in his favor on his equal protection claims.

## B. Positive adjustment time

Singh brings ex post facto claims for damages against defendants Jess, Kemper, Carol Briones, Kathryn Anderson, Sally Tess, Shirley Storandt, Mark Heise, Danielle LaCost, Dennis Baskins, Emily Nelson, Debra Seitz, and Kathy Nagle for their roles in eliminating his "positive

adjustment time" eligibility or failing to act on his petitions for early release.[4] Most of these defendants served on the "Act 28 Repeal Committee" that implemented the 2011 changes to PAT law that were ultimately found to be unconstitutional in Singh's state habeas case. Singh alleges that even after the Wisconsin Court of Appeals struck down the law eliminating PAT, defendants would not consider his PAT applications.

Defendants argue in part that Singh's PAT claims fail because he was not injured. *See Norwood v. Brennan*, 891 F.2d 179, 182 (7th Cir. 1989) ("The ex post facto clause is violated if a law: 1) has retrospective application and 2) disadvantages the offender affected by it."). Defendants contend that Singh was not harmed by the repeal of the 2009 PAT law because he did not spend extra time in prison because of it.

It is important to understand which convictions Singh could have received PAT for. Defendants say that the only conviction under which he could have earned PAT was his second conviction—the first conviction was modified down to only a one-year jail sentence, to which PAT did not apply, and the third conviction concerned events occurring after the 2009 PAT law was repealed.

I agree that Singh could not have received PAT for his third conviction, because the offense occurred after the repeal of the PAT law. But I am not persuaded that Singh should not have earned PAT for his first conviction because of the later conversion to a jail sentence: that conversion occurred in 2015, only after he already actually served his 18 months of prison time for that conviction.

---

[4] Singh also named Tony Streveler as a defendant on these claims, but the United States Marshal was unable to serve Streveler with the complaint because he was located in the nation of Georgia. *See* Dkt. 38. Ultimately, the service issue is immaterial because I conclude that qualified immunity applies to all of the defendants on the PAT claims.

Defendants contend that Singh was not harmed by failing to receive PAT for the second sentence because the third conviction "nullified" any PAT he was eligible for on the second conviction. Dkt. 76, at 23. That is, I take defendants to be saying that because Singh could not receive PAT for the third conviction, he was forced to serve that entire two-year incarceration, which overlapped with any potential PAT-related early release on the second sentence.

But this theory runs counter to the facts of Singh's incarceration as set out by defendants' proposed findings, the online court records, and the Wisconsin Supreme Court in Singh's habeas case. Singh ultimately served about 29 months in prison, from January 2012 to May 2014: 18 months for the first conviction plus 24 months for the second conviction minus 13 months of credit for time spent in presentence custody. *See Singh*, 2016 WI 67, ¶¶ 158–175, 371 Wis. 2d 127, 883 N.W.2d 86 (Justice Ziegler's opinion concurring in part and dissenting in part, laying out the timeline for each of Singh's three sentences and presentence custody). His third conviction, to run concurrent to the others, would not have nullified all of the PAT that Singh should have earned on the first and second convictions, because the third sentence finished 24 months into his 29-month incarceration.

The state's theory appears to stem from a calculation of Singh's incarceration made after his first sentence was modified down to a year of jail time. *See* Dkt. 59, ¶ 25 (defendant Seitz's declaration) ("I have reviewed Mr. Singh's *current* sentence structure and I find the following."). Defendants' analysis does not account for Singh in fact having served 18 months of prison time for the first conviction. Seitz states that Singh's incarceration ended on November 28, 2013, *id.*, ¶ 26, but this simply appears to be incorrect: his incarceration ended in late May 2014.

So I conclude that had the state not passed an unconstitutional ex post facto law modifying the PAT program, Singh almost certainly would have been released earlier: although there is no evidence directly saying that Singh earned any PAT, it would strain credulity to suggest that he did not qualify for so much as one day of PAT, and defendants do not argue otherwise. That still leaves the question whether any of the named defendants can be found liable for the violation of Singh's constitutional rights.

The problem for Singh is that the defendants' actions were all the result of their attempting to comply with the 2011 changes to the PAT law. 2011 Wisconsin Act 38 largely wiped the PAT program off the books, and defendants were tasked either with changing policies to fit the new law, or with assessing Singh's requests in light of the new policies.

Defendants say that none of them had any authority to implement policies that contravened the new state statute, nor could they grant him an early release based on positive adjustment time once Act 38 was passed. Of course, defendants don't have the authority to violate the Constitution either. But given these unusual circumstances, I conclude that defendants are entitled to qualified immunity on these claims.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Put a bit more bluntly, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The doctrine translates into a two-part test: (1) whether the public official violated the plaintiff's constitutional rights; and (2) whether those rights were clearly established at the time of the alleged violation. *Ashcroft*

*v. al-Kidd*, 563 U.S. 731, 735 (2011). I conclude that Singh's ex post facto rights were not clearly established.

A right is "clearly established" when a reasonable official would know that his "conduct was unlawful in the situation he confronted." *Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 915 (7th Cir. 2011) (citations omitted). Singh bears the burden of demonstrating that his rights were clearly established to overcome qualified immunity. *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011).

When defendants earlier moved to dismiss the case in part on qualified immunity grounds, I concluded that it was premature to consider dismissing the PAT claims yet, because Singh "alleges that defendants chose to interpret Wisconsin statutory changes in a way that did what [*Weaver v. Graham*, 450 U.S. 24 (1981),] prohibited." Dkt. 53, at 6. In *Weaver*, the United States Supreme Court held that a Florida statute altering the availability of good-time credit violated the prohibitions of the Ex Post Facto Clause.

At the summary judgment stage, defendants show that they didn't "choose" to interpret 2011 Wisconsin Act 38 in any way; they were tasked with implementing policies that applied the law as written, and they did not have the power to issue regulations or make decisions that ran counter to the statutory changes. They did not come up with the plan to stop awarding PAT after August 3, 2011; the legislature did. The same holds true for the changes to the early release petition process.

Generally speaking, an officer is entitled to enforce a duly enacted law without independently evaluating its constitutionality. "The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be

bound to see its flaws." *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979). The Court of Appeals for the Seventh Circuit has applied the *DeFillippo* holding in the qualified immunity context. *See Doe v. Heck*, 327 F.3d 492, 515–16 (7th Cir. 2003) (holding that although the statute authorizing child-welfare caseworkers to find, seize, and interview suspected abused children without a warrant and without a parent's consent was unconstitutional, the caseworkers were entitled to qualified immunity from the Fourth Amendment violation because they acted pursuant to a lawful statute; the statute was not "so patently unconstitutional as to deny the defendants qualified immunity"). I conclude that the PAT provisions in 2011 Wisconsin Act 38 were not so patently unconstitutional that it would be obvious to defendants that they were violating Singh's rights.

That is, at least until the Wisconsin courts ruled the changes unconstitutional. Singh alleged that even after the Wisconsin Court of Appeals ruling, defendants would not consider his PAT applications. The facts here show that a portion of Singh's claims do involve events postdating the Wisconsin Court of Appeals decision. But all of defendants' alleged actions following that decision had to do with Singh's requests about *how* to petition for early release. The portion of the act changing the *procedures* for a PAT-based early release was not ruled unconstitutional by the court of appeals. Ultimately, the Wisconsin Supreme Court did rule that the procedures in § 973.198 were unconstitutional, but Singh had been released from prison by then, and he did not bring claims about any events postdating his release.

## C.  Access to the courts

I granted Singh leave to proceed on a claim that defendant Seitz violated his right to access the courts by depriving him of evidence he needed to contest his state-court habeas claim. Seitz denied Singh's open records requests for statistics concerning the number of

prisoners granted early release before and after repeal of 2009 Wis. Act 28. The Wisconsin Court of Appeals suggested that this type of evidence was necessary to prove his ex post facto claim about the change in the role of the state circuit court in considering PAT. *See Singh*, 2014 WI App 43, ¶ 25 ("Singh alleges that there have been fewer PAT-based early releases since the enactment of 2011 Wis. Act 38, but provides no proof in this regard or proof that any such change in releases is the result of the sentencing court's modified role.").

Prison officials have an affirmative duty to provide prisoners "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343, 351 (1996), the Court explained that a prisoner cannot prove a violation of his right of access to the courts unless he identifies a nonfrivolous claim that was lost or is being impeded.

But here, Singh cannot show that any action was impeded or lost because of the open-records denial. Singh did not request the PAT early release information from Seitz until after the Wisconsin Court of Appeals decision, so it had nothing to do with that ruling. And Singh won the early-release-procedure claim in the Wisconsin Supreme Court. So I will grant summary judgment to defendants on this claim.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 54, is GRANTED.

2. The clerk of court is directed to enter judgment for defendants and close this case.

Entered March 27, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge